## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| Jeanne Imperati, as Administrator of the Estate of William Bennett, | Civil No. 3:18-cv-01847 (RNC) |
| Plaintiff, | |
| v. | July 16, 2020 |
| Scott Semple et al., | |
| Defendants. | |

## RULING AND ORDER ON PLAINTIFF'S MOTION TO COMPEL [ECF NO. 77]

The plaintiff, Jeanne Imperati, has moved the Court for an order compelling the defendants to produce six categories of documents lettered "A" through "F." ("Motion," ECF No. 77.) The Court resolved the Motion with respect to Categories A, D, E and F through two orders dated May 22, 2020. (ECF Nos. 84, 85.) Category B concerned documents responsive to production requests that she served with a November 14, 2019 deposition notice. (ECF No. 77-8) (the "Deposition Requests"). Category C involved documents responsive to her second set of requests for production dated November 22, 2019. (ECF No. 77-10) ("Second Set"). The two orders not only fully resolved Categories A, D, E and F, but partially resolved Categories B and C as well.

After those orders, only one issue remains: whether the defendant, Scott Semple, may withhold documents responsive to Categories B and C under claims of attorney-client privilege, deliberative process privilege and work product protection. Semple did not assert these objections until May 2020, and he did not serve a privilege log until June 2020 – six months after it was due under the rules. Imperati argues that these failures constitute a waiver of Semple's privilege and work product claims. (ECF No. 89, at 2-7.) Semple disagrees. (ECF No. 86, at 10-17.)

In evaluating whether a party has waived his privileges through delay, courts ordinarily consider the length of the delay, the willfulness of the defaulting party's non-compliance with the rules, and the harm that the delay imposed upon the other party.  *E.g., Am. Int'l Specialty Lines Ins. Co. v. Conn. Res. Recovery Auth.*, No. 3:06-cv-00699 (AVC), 2012 WL 13018418, at *3 (D. Conn. Mar. 6, 2012).  Courts also typically hold that "only flagrant violations of the discovery rules should result in a waiver of privilege."  *E.g., id.*  Privileges serve important purposes, and they should therefore be deemed waived "only after careful thought."  *Horace Mann Ins. Co. v. Nationwide Mut. Ins. Co.*, 238 F.R.D. 536, 538 (D. Conn. 2006) ("*Horace Mann I*").  (*See* discussion, Section II.A *infra*.)

Applying these principles, the Court holds that Semple has not waived his privileges with respect to Category B, but has waived his privileges with respect to Category C.  Although his discovery conduct was grossly non-compliant with the rules in both instances, it was more willful and flagrant in the case of Category C.  The Court will therefore order Semple to produce any unproduced documents that are responsive to Category C, without withholding any under a claim of attorney-client privilege, deliberative process privilege or work product protection.  (*See* discussion, Section II.B *infra*.)

Just because Semple has not waived the right to assert privilege claims with respect to Category B does not necessarily mean that those privilege claims are valid.  (*See* discussion, Section II.C *infra*.)  His tardy privilege logs affirmatively demonstrate that some of the documents he withheld are not attorney-client privileged.  Yet he also claims that those documents are immunized from discovery by the deliberative process privilege, and the Court cannot tell from his logs whether that privilege applies.  Semple will be ordered to produce them for *in camera* review, as discussed more fully in Sections II.C and III below.

## I.   FACTUAL BACKGROUND

This is a prison civil rights case.  The plaintiff, Jeanne Imperati, is the administrator of the estate of her nephew, William Bennett.  (Am. Compl., ECF No. 59, at 1 & ¶ 125.)  Bennett died of cancer on November 11, 2017 while in the custody of the Connecticut Department of Correction ("DOC").  (*Id.* ¶¶ 148, 149.)  Imperati sued several DOC officials, claiming that they violated 42 U.S.C. § 1983 and the Eighth Amendment by acting with deliberate indifference to Bennett's serious medical needs.  (*See generally id.*)  Among the officials that she sued was the now-retired DOC Commissioner, Scott Semple.  (*Id.* ¶¶ 240-319.)

The parties held their Rule 26(f) conference on February 15, 2019 (ECF No. 37, at 1), and Imperati served her first set of discovery requests soon afterward.  ("First Set," ECF No. 77-1, at 8.)  Semple served responses and objections to the First Set on April 26, 2019, and he objected to one interrogatory and several requests for production on privilege grounds.  (ECF No. 77-11 at 7, 9-15.)  His privilege objections to the document production requests read:  "To the extent responsive documents are identified and located, documents which are not privileged and not subject to objection by the defendant(s) will be provided.  To the extent documents are privileged or subject to objection, a log will be provided to plaintiff's counsel."  (*E.g., id.* at 16.)  The parties apparently resolved any disagreements about the First Set of requests, because the Motion does not seek to compel any documents encompassed by them.

On November 14, 2019, Imperati served a deposition notice on Semple.  (ECF No. 77-8.)  She attached Deposition Requests seeking production of twenty-four classes of documents, including "[a]ll orders, instructions, strategies, plans or directives [Semple] issued or received relating to [his] oversight and management of the medical care of inmates at" the Osborn, Enfield and Brooklyn Correctional Institutions; "[a]ll emails, documents and records [Semple] sent to or

3

received from" the Department of Correction's medical director, Dr. Kathleen Maurer; and "[a]ll documents and records relating to the Department of Correction's review of" a certain "Memorandum of Agreement" with the UConn Health Center.  (*Id.*)  Although Rules 30(b)(2) and 34(b)(2) gave Semple thirty days in which to respond or object to these requests, Imperati sought compliance within a week.  She noticed the deposition for November 21, 2019 and requested that Semple produce the documents then.  (*Id.*)

At the deposition, Imperati's counsel asked Semple to represent that he had produced all documents responsive to the Deposition Requests.  (ECF No. 77-9, at 8:19-20.)  Semple's counsel interjected that she had only recently "got this deposition notice which is quite extensive."  (*Id.* at 9:6-7.)  She represented that her team had "started working on this," and added that "to the extent we can identify these documents, find them, we will produce them . . . to the extent there's no objection on our part."  (*Id.* at 9:7 – 10:6.)  Both parties evidently understood that Imperati would take part of Semple's testimony that day; that Semple would later produce those responsive documents to which he asserted no objection; and that he would then come back a second time to be examined on any issues suggested by the document production.  (ECF No. 77-8, at 1-2 (deposition notice stating that "[i]t is understood that . . . this deposition will be the first half of the deposition of Defendant Semple, and when the production is complete, a second half of this deposition will be scheduled and completed"); ECF No. 77-9, at 9:17-18 (remarks of Semple's counsel on the record at his deposition, contemplating document production in advance of "what I presume will be day two of the deposition")).

Semple's deposition testimony apparently suggested additional lines of inquiry, and accordingly Imperati served yet another set of document production requests the next day.[1]  This Second Set of requests sought documents relating to six other cases that Semple had discussed with Dr. Maurer.  (ECF No. 77-10, at 1.)  It also sought production of additional documents concerning the Memorandum of Agreement between DOC and UConn Health.  (*Id.* at 1-2.)

In contrast to the Deposition Requests – to which he never responded in writing – Semple did serve a written response to the Second Set on February 13, 2020.  (*Id.*)  Importantly, he did not object to the Second Set for privilege reasons, or on any other ground.  (*Id.*)  Instead, he merely responded that he was "no longer employed by the State of Connecticut Department of Correction and is not in possession of any such documents."  (*Id.*)

By early May, Semple still had not produced any documents responsive to the Deposition Requests or the Second Set.  He also had not served any written response to the Deposition Requests, even though those requests had been propounded more than five months before.  After complying with Local Rule 37's meet-and-confer requirement,[2] Imperati's counsel moved to compel on May 8, 2020.  (ECF No. 77.)

---

[1]     Evidently Imperati did not conceive of the Deposition Requests as a request for production under Rule 34.  She therefore called these November 22, 2019 requests her "Second Set" rather than her third.  The Court will follow her naming convention.

[2]     Counsel represents that he had "conferred many times with [Semple's counsel] in an effort to resolve by agreement the issues raised by the motion without the intervention of the Court and have been unable to reach such an agreement."  (ECF No. 77-2, ¶ 1.)  He attached letters and e-mails as evidence of compliance with the meet-and-confer requirement, but none of these materials concern the Deposition Requests or the Second Set.  (*See* ECF No. 77-12 (letter concerning then-existing issues with the First Set); 77-19 (November 21, 2019 e-mail principally concerning other issues); ECF No. 77-23 (e-mail concerning requests served on a different defendant).)  The Court will nevertheless accept counsel's representation, in part because Semple has not opposed the motion on the ground of non-compliance with Local Rule 37.

As noted above, Imperati's Motion sought an order compelling production of six categories of documents lettered "A" through "F."  Category A included "handwritten notebooks" and notes authored by Bennett before his death.  (ECF No. 77-1, at 1.)  Category B included documents responsive to the Deposition Requests, and Category C encompassed documents sought in the Second Set.  (*Id.*)  Categories D, E and F respectively concerned DOC's "Utilization Review Committee"; a "Hospice Program Manual"; and document requests served on another defendant, Dr. Cary Freston.  (*Id.* at 2.)

Judge Chatigny referred Imperati's Motion to the undersigned on May 11, 2020.  (ECF No. 78.)  The Court reviewed the Motion and noted on the docket that "according to the plaintiff's motion, few of the discovery requests at issue have been objected to."  (ECF No. 81.)  To help determine the true scope of the dispute, the Court directed Semple to file a status report "specifically identifying the discovery requests to which [he] still maintain[s] an objection" and "stat[ing] the date on which the objection was first asserted."  (*Id.*)

The Court also entered an order directed to Semple's response to the Second Set.  Unimpressed by his claim not to "possess[]" any responsive documents, the Court "respectfully reminded [Semple] that Rule 34 requires production not only of documents in his physical possession, but also documents within his 'custody or control.'"  (*Id.*)  The Court "further reminded [him] that courts in the Second Circuit interpret 'control' to include documents that are within his 'practical ability to obtain.'"  (*Id.*)  It therefore ordered him to include, in his status report, a statement of whether he "continues to contend that the documents requested by plaintiff's second of requests for production are not within his 'possession, custody, or control' for purposes of Rule 34(a)(1)."  (*Id.*)

Semple filed his status report on May 20, 2020.  (ECF No. 82.)  In the report, he said that he objected to the Deposition Requests and the Second Set on grounds of attorney-client privilege, work product, and deliberative process privilege.  (*Id.* at 2-10.)  He added that these objections were "being asserted today" – in other words, he acknowledged that he had not asserted them before May 20, 2020.  (*Id.*)  He asserted no objections other than privilege and work product. Significantly, he withdrew his claim that responsive documents were unavailable to him on account of his retirement from DOC.  (*Id.* at 7-10.)

Two days later, the Court issued two orders.  In the first of the two, the Court ordered production of all documents in Categories A, D and E because no objection had been raised in the status report.  (ECF No. 84.)  The second order resolved the parties' dispute over Category F by directing Dr. Freston to produce all documents responsive to Imperati's requests, except for those documents "which contain information, which, if disclosed, would compromise the safety and security of the Department of Correction or its employees or inmates."  (ECF No. 85, at 3-4.)  The second order also directed that, since Semple's only objections to Categories B and C were privilege and work product objections, he must "produce to the plaintiff, by June 5, 2020, all documents that are both (a) responsive to [the requests] and (b) not subject to his attorney-client privilege, deliberative process privilege, and work product objections."  (*Id.* at 2-3.)  In other words, the two orders resolved the entirety of the Motion except for Semple's privilege and work product claims.

The second order also explained how the Court would address those claims.  The order directed that, "[f]or each document withheld under a claim of attorney-client privilege, deliberative process privilege or work product protection, Commissioner Semple shall, by June 5, 2020, provide the plaintiff with a privilege log that complies with D. Conn. L. Civ. R. 26(e)."  (*Id.*)  It

went on to say that "[b]y May 29, 2020, the Commissioner shall file a memorandum of law explaining why these three objections were not waived by his failure to assert them seasonably." (*Id.*)  The order added that "[t]he plaintiff may reply to this memorandum in a reply brief."  (*Id.*)

Semple filed his memorandum on May 29th as ordered, and it revealed that he had not only failed to produce documents responsive to the Deposition Requests and the Second Set – he had failed even to collect and review those documents.  (ECF No. 86, at 13.)  In an evident effort to explain why he could not provide more detail about his privilege claims, his counsel wrote that she could not "assert that the attorney-client privilege applies to a document without first identifying the privilege and reviewing the document itself."  (*Id.*)  In other words, his counsel could not provide more detail – in a privilege log or otherwise – because she had not yet looked at the body of documents to determine whether it contained any privileged communications.

The Court "interpret[ed] the Commissioner's May 29, 2020 submission . . . as suggesting that he may not actually make any privilege claims after his counsel has reviewed all of the responsive documents."  (ECF No. 91.)  It therefore "order[ed] Commissioner Semple to state whether he is, in fact, asserting attorney-client privilege, work product, or deliberative process objections to the production of any documents responsive to Categories 'B' and 'C.'"  (*Id.*)  The Court ordered him to do so by 5:00 p.m. on Friday, June 19, 2020, and it added that "[i]f he is making such an objection," he must file as well as serve "a privilege log that complies with D. Conn. L. Civ. R. 26(e)."  (*Id.*)  If his filing confirmed that he was indeed asserting privilege claims, the Court would "take up the remainder of the Plaintiff's Motion to Compel promptly thereafter." (*Id.*)

Semple made his privilege claims in three logs that he served on Imperati on June 19, 2020.[3]  (ECF No. 97 & Exs. 8A, 8B and 8C thereto.)  On the same day, he also produced several thousand pages of documents responsive to Imperati's requests.  (*See* ECF No. 97-1.)  Evidently he *still* had not completed his review of responsive documents, however, because on July 6, 2020 he produced even more documents and made further privilege claims.  (ECF Nos. 102, 102-1.)  In any event, his June 19th logs removed any doubt about whether he was making such claims, and consequently the Court will now "take up the remainder of the Plaintiff's Motion to Compel" as promised.  (ECF No. 91.)  The Court will first discuss the governing legal principles, and then apply them to the facts of this case.

## II.  DISCUSSION

### A.    Legal Principles Applicable to Claims of Privilege Waiver

The privileges at issue in this case serve important values.  The attorney-client privilege "encourages clients to make full and frank disclosures to their attorneys, who are then better able to provide candid advice and effective representation."  *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 108 (2009) (quoting *Upjohn Co. v. U.S.*, 449 U.S. 383 (1981) (quotation marks omitted)).  Such disclosures "promote broader public interests in the observation of law and administration of justice."  *Upjohn*, 449 U.S. at 389.  The deliberative process privilege likewise "exists to enhance the quality of [governmental] agency decisions, by protecting open and frank discussion among those who make them within the Government."  *Schomburg v. N.Y. City Police Dep't*, 298 F.R.D. 138, 144 (S.D.N.Y. 2014) (quoting *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*,

---

[3]      Although Semple had been ordered to serve the logs *and file them on the docket* (ECF No. 91), his counsel neglected to do the latter.  Unaware that Semple had served his logs on Imperati, the Court inferred that he was not making any privilege claims and initially ordered him to make a complete production.  (ECF No. 96.)  Semple's counsel has since corrected the error and filed the logs.  (ECF Nos. 97 and exhibits thereto; *see also* ECF No. 107.)

643 F. Supp. 2d 439, 441 (S.D.N.Y. 2009) (quotation marks omitted)).  And the work product doctrine "shelters the mental processes of the attorney, providing a privileged area in which he can analyze and prepare his client's case."  *U.S. v. Nobles*, 422 U.S. 225, 238 (1975).

Because these privileges are important, courts are not quick to find that they have been waived.  As one court put it, "a waiver of privilege objections is a more serious sanction than a waiver of other objections."  *Caudle v. Dist. of Col.*, 263 F.R.D. 29, 36 (D. D.C. 2009).  Principally for this reason, "a court's decision to consider a claim of attorney-client privilege waived should be done only after careful thought."  *Horace Mann I*, 238 F.R.D. at 538; *see also Main St. Am. Assur. Co. v. Savalle*, No. 3:18-cv-02073 (JCH) (SALM), 2019 WL 4437923, at *4-5 (D. Conn. Sept. 16, 2019) ("[T]he Court is generally reluctant to find claims of attorney-client privilege and work product protection waived.").

The Second Circuit has not established a bright-line test for determining when privileges have been waived by delay, but district courts in the circuit have typically considered three factors.  The first is "the length of the delay" in asserting the privilege claim.  *E.g., Am. Int'l Specialty Lines*, 2012 WL 13018418, at *3; *Schiller v. City of N.Y.*, 245 F.R.D. 112, 118 (S.D.N.Y. 2007).  The second factor is "the willfulness of the transgression."  *Am. Int'l Specialty Lines*, 2012 WL 13018418, at *3; *accord AFP Imaging Corp. v. Philips Medizin Sys.*, No. 92-Civ.-6211 (LMM), 1993 WL 541194, at *3 (S.D.N.Y. Dec. 28, 1993) (considering the party's "willfulness or cavalier disregard for the rule's requirements").  And the third factor is the "harm to other parties" occasioned by the delay in asserting the claim.  *Am. Int'l Specialty Lines*, 2012 WL 13018418, at *3.  In applying these three factors, courts have often added that "only flagrant violations of the discovery rules should result in a waiver of privilege."  *E.g., id.* (quotation marks and brackets omitted); *accord Dey, L.P. v. Sepracor, Inc.*, No. 07-Civ.-2353 (JGK) (RLE), 2010 WL 5094406,

at *2 (S.D.N.Y. Dec. 8, 2010); *Essex Ins. Co. v. Interstate Fire & Safety Equip. Co., Inc.*, 263 F.R.D. 72, 76 (D. Conn. 2009).

Imperati acknowledges that courts generally follow this three-pronged approach (*see* ECF No. 89, at 2), but she also cites a Colorado case employing a different analysis.  (*Id.* at 3) (citing *Pham v. Hartford Fire Ins. Co.*, 193 F.R.D. 659 (D. Colo. 2000)).  In *Pham*, the court held that a party automatically waives the attorney-client privilege whenever it misses the deadline set out in Rule 34(b)(2)(A), unless it can "articulate good cause for the delay."  193 F.R.D. at 662.  The court reached its holding in part by applying a rule for interrogatories – Rule 33(b)(4), which provides that "[a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure" – to document production requests under Rule 34.  *Id.* at 661 (citing *Byrd v. Reno*, No. CIV.A.96-2375 (CKK/JMF), 1998 WL 429676 (D.D.C. Feb. 12, 1998)); *see also Horace Mann I*, 28 F.R.D. at 538 (applying Rule 33(b)(4)'s automatic waiver provision to document requests under Rule 34).

The Court does not find *Pham* persuasive, at least in the privilege context.  For one thing, the text of the rules does not appear to support engrafting Rule 33's automatic waiver provision onto Rule 34.  As one court has written, "[i]f the drafters of the Federal Rules saw fit to include an automatic waiver provision in Rule 33 and to omit such a provision from Rule 34, that implies that there is no automatic waiver of an untimely objection under Rule 34."  *Ashford v. City of Milwaukee*, 304 F.R.D. 547, 549 (E.D. Wis. 2015).  Moreover, "there are good reasons why Rule 34 may lack such an automatic-waiver provision."  *PEG Bandwidth PA, LLC v. Salsgiver, Inc.*, No. 3:16-CV-178, 2017 WL 2992219, at *3 (W.D. Pa. July 13, 2017).  Whereas a finding of waiver in the interrogatory context merely requires the defaulting party to prepare a single document, complying with document requests is often "more involved, and can potentially cost thousands of

dollars." *Id.* It can be "draconian to require a party with a valid but untimely objection to potentially incur thousands of dollars to produce documents that the other party would otherwise not be entitled to." *Id.* Furthermore, "reading an automatic-waiver provision into Rule 34 could result in a court imposing discovery sanctions on a defendant that are disproportionate to the defendant's violation. . . . contrary to the principle that discovery sanctions should be tailored to the severity of the violation." *Ashford*, 304 F.R.D. at 549.

In saying that it finds *Pham* unpersuasive, the Court does not mean to suggest that parties can be cavalier about their discovery deadlines, or that they can ignore the rules without incurring consequences. It is axiomatic that "[t]he time limits set forth in the Federal Rules of Civil Procedure are not optional." *Berube v. Great Atl. & Pac. Tea Co., Inc.*, No. 3:06-cv-00197 (PCD), 2006 WL 3826702, at *5 (D. Conn. Nov. 30, 2006) (quoting *Billups v. West*, No. 95-Civ.-1146, 1997 WL 100798 (S.D.N.Y. Mar. 6, 1997)). These time limits are "mandatory for all litigants – large or small, public and private," and litigants "simply do not have unbridled, unilateral discretion to decide when they will respond to discovery requests." *Id.* "The very notion of such a chaotic system would make it impossible for cases to be resolved in a 'just, speedy, and inexpensive' manner contemplated by Rule 1 of the Federal Rules of Civil Procedure." *Id.*

Plainly, Semple should face consequences for breaking the rules. The question presented by the remaining portion of Imperati's Motion, however, is whether Semple should face the *specific* consequence of a privilege waiver. The Court concludes that the resolution of that question should be guided by the three factors identified in cases like *American International Specialty Lines* and *AFP Imaging Corp.* – that is, the length of the delay, the willfulness of the transgression, and the harm that the delay inflicted on Imperati – rather than by the principle of *Pham*. Each of the three factors will now be discussed in turn.

B.     **Application of the Foregoing Principles to This Case**

1.     **The length of the delay**

Semple delayed at least five months in asserting his privilege claims.  Imperati served the Deposition Requests on November 14, 2019, and Semple's privilege objections were therefore due on December 16, 2019 through the combined operation of Rules 30(b)(2), 34(b)(2) and 6(a)(1). Imperati served the Second Set on November 22, 2019, and Semple's objections to those requests were accordingly due on December 23, 2019 by operation of Rules 34(b)(2) and 6(a)(1).  Yet he did not make any privilege claims until May 20, 2020.  (ECF No. 82.)  And it was not until June 19, 2020 that he wrote those claims down in privilege logs as required by Local Rule 26(e). (ECF Nos. 97-9, 97-10, 97-11.)

Courts in this district have held that similar delays supported a finding of waiver.  In *Horace Mann Insurance Co. v. Nationwide Mutual Insurance Co.* ("*Horace Mann II*"), for example, the court held that a four-month delay in serving a privilege log was "unreasonable" and contributed to a waiver of privilege.  240 F.R.D. 44, 48 (D. Conn. 2007).  And in *Essex Insurance Co. v. Interstate Fire & Safety Equipment Co., Inc.*, the court held that a five-month delay "amount[ed] to a flagrant delay tactic" when, in the meantime, the requesting party had been "forced to file a motion to compel and a memorandum and affidavit in support of said motion." 263 F.R.D. 72, 77 (D. Conn. 2009).  To be sure, contrary cases exist elsewhere in the Second Circuit – and indeed, the *AFP Imaging Corp.* case touted by Imperati excused an eleven-month delay.   1993 WL 541194, at *2-3 ("Admittedly, plaintiff was dilatory in its search for, and production of, all responsive documents, but that is a matter which . . . is more appropriately addressed in the context of the award of expenses or sanctions . . . the attorney-client privilege has not been waived.").  But the weight of authority in the District of Connecticut regards a five-month

delay as supporting a finding of waiver, and Semple has cited no case to the contrary.  (ECF No. 86.)  The Court therefore concludes that the first factor weighs in favor of Imperati's Motion.

> ### 2.        The willfulness of the transgression

Semple is represented by sophisticated, experienced lawyers who are expected to know and follow the rules.  Moreover, his lawyers know that there are consequences for failing to follow those rules.  Yet in deciding whether a waiver of privilege is the appropriate consequence to impose, courts consider whether the failure was willful or merely negligent.  *See, e.g., Am. Int'l Specialty Lines*, 2012 WL 13018418, at *3-4 (considering whether to "impute bad faith to [the defendant's] conduct in this matter"); *Dey, L.P.*, 2010 WL 5094406, at *2-3 (analyzing whether "Dey's delay was willful" or whether instead it "acted in good faith"); *AFP Imaging Corp.*, 1993 WL 541194, at *3 (declining to impose sanction of privilege waiver where plaintiff was merely dilatory in asserting its claims).

While Semple's attorneys' conduct with respect to the Deposition Requests was certainly negligent, it does not strike the Court as willful or flagrant.  The requests were served only a week before the deposition (ECF No. 77-8), and Semple's counsel did object to them on the record, however vaguely.  (ECF No. 77-9, at 10:5-7.)  Although the rules inarguably called for counsel to follow up that oral objection with specific, written objections within thirty days, *see* Fed. R. Civ. P. 34(b)(2), and although they likewise required her to serve a privilege log much sooner than she did, *see* D. Conn. L. Civ. R. 26(e), the Court declines to hold that her failures were willful or flagrant when the record suggests that the parties may have agreed to resolve document issues amicably in advance of a second deposition session.  (*See* ECF No. 77-8, at 1-2; ECF No. 77-9, at 9:17-18.)  The Court finds it noteworthy that Imperati's Motion is unsupported by any document or e-mail showing that her counsel followed up on the Deposition Requests but was rebuffed; as

discussed in footnote 2 above, the e-mails and other exhibits principally concern the First Set. While a requesting party is of course entitled to production of discoverable documents without having to ask twice, the customary indicia of willful non-compliance – unanswered follow-ups, high-handed refusals to meet and confer, and so forth – do not seem to be present here.

To be sure, Semple's counsel's conduct since May 8th has made an already-close call even closer. She did not comply with the Court's order to file privilege logs by June 19th (ECF Nos. 96, 97), nor did she comply with the order to produce all *non*-privileged documents responsive to Categories B and C by the same date. (*See* ECF Nos. 85, 88 (ordering production of non-privileged documents by June 5th, and then extending deadline to June 19th on Semple's motion); ECF No. 102 (disclosing that Semple was still producing documents on July 6th).) But she has represented – both in writing and on the record during the Court's many teleconferences – that these were instances of neglect, not willfulness. (*E.g.*, ECF No. 97.) In the case of the privilege logs, she candidly confessed to "an unintended mistake" and corrected it the next morning. (ECF No. 97-1, ¶ 16.) And in the case of the supplemental document production, she explained that a colleague had mistakenly placed a cohort of documents in the "non-responsive pile," and that she discovered the error and corrected it voluntarily. While these blunders make a close call even closer, and while there is no escaping the fact that Semple failed to comply with orders, his counsel's conduct with respect to the Deposition Requests impresses the Court as more negligent than willful.

The Second Set presents a different and more troubling picture. In contrast to the Deposition Requests, Semple did serve written responses to the Second Set, and those responses clearly eschewed any privilege claims. (ECF No. 77-10.) Instead, Semple contended that he did not "possess[] any such documents" (*id.*) – a claim that was quickly proven untrue when, after the Court reminded his counsel what it meant to "possess" a document under Rule 34, he suddenly

developed an ability to produce responsive materials.  (*See* ECF No. 81 (Court order regarding "possession"); *see also* ECF No. 82, at 7-10 (Semple's status report, filed only five days later, conceding that he could obtain responsive documents from DOC).)  Forced to abandon his unmeritorious objection, Semple did not then produce all responsive documents; instead, he withheld some under new privilege claims that he could have asserted – but did not assert – in his written response months before.  (*Id.*)  Put another way, Semple responded to Imperati's Second Set of requests with shifting objections and now-you-see-it, now-you-don't privilege claims, and this response strikes the Court as qualitatively different than the response to the Deposition Requests.

In summary, the Court observes evidence of willfulness and flagrant conduct in the case of the Second Set, but not in the case of the Deposition Requests.  The willfulness factor therefore supports a finding of waiver with respect to the former but not the latter.

### 3.    The harm to the plaintiff

The third factor to be considered is the "harm to other parties" occasioned by the delay in asserting the claim.  *E.g., Am. Int'l Specialty Lines*, 2012 WL 13018418, at \*3.  A paradigmatic example of "harm" sufficient to support a finding of waiver is when the privilege claim is first asserted after discovery has closed.  *Compare Dey*, 2010 WL 5094406, at \*3 ("Discovery is now closed, and Sepracor would be prejudiced if Dey is allowed to claim privilege at this late stage of the litigation.") *with Pem-America, Inc. v. Sunham Home Fashions, LLC*, No. 03-Civ.-1377 (JFK) (RLE), 2007 WL 3226156, at \*2 (S.D.N.Y. Oct. 31, 2007) ("Sunham's tardiness in providing a privilege log is not a 'flagrant' violation especially considering there is not a discovery deadline set at this time.").

Imperati claims to have been "prejudiced by the willful delay in production" (ECF No. 89, at 5), but the Court concludes that the prejudice is not sufficiently grave to place this factor on her side of the scales.  Imperati says that she took four depositions and defended two others "in December, January and February 2020 . . . without these discovery materials" (*id.*), but she could have avoided that by serving her discovery requests earlier.  Moreover, discovery is still open and there is still time to re-depose any witness whose testimony may be affected by the documents that the Court has ordered produced, although to be sure, time is growing short.  Imperati also claims to have been prejudiced by having to expend "time and resources . . . on the motion to compel," but that concern can be addressed with other sanctions.  In short, the third factor does not weigh in favor of finding that Semple has waived his privileges.

### 4.    Balancing the three factors

Although the last factor weighs against a finding of waiver, the Court concludes that the length of the delay and the willfulness of Semple's conduct with respect to the Second Set are too disconcerting to ignore.  Balancing the three factors, the Court holds that Semple has waived his privileges with respect to the Second Set but not with respect to the Deposition Requests.  He will therefore be ordered to produce to Imperati all previously unproduced documents that are responsive to the Second Set, without withholding any pursuant to attorney-client privilege, deliberative process privilege or work product objections.  In light of the fast-approaching discovery deadline and the limited number of documents involved, the Court will order him to make this production by 5:00 p.m. on Tuesday, July 21, 2020.

### C.    Whether Commissioner Semple Has Proven His Privilege Claims

Just because Semple has not waived his privilege claims with respect to the Deposition Requests does not mean that those claims are necessarily valid.  To successfully withhold an otherwise-discoverable document under a claim of privilege, Semple must meet his burden to show

17

that each element of the privilege is satisfied.  "It is well settled that the burden of establishing the existence of . . . [the] privilege, in all of its elements, rests with the party asserting it."  *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000) (brackets and quotation marks omitted).

The attorney-client privilege has three principal elements.  "A party invoking the attorney-client privilege must show (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice."  *Bernstein v. Mafcote, Inc.*, 43 F. Supp. 3d 109, 113 (D. Conn. 2014) (citing *In re County of Erie*, 473 F.3d 413 (2d Cir. 2007)).  The negative implication of the first element is that documents that are not, or do not contain, communications between a lawyer and client are ordinarily not covered by the privilege.  *See, e.g., Constr. Ind. Servs. Corp. v. Hanover Ins. Co.*, 206 F.R.D. 43, 46 (E.D.N.Y. 2001) (communication between a corporation's CEO and its accountant not protected by the attorney-client privilege).

Semple claims attorney-client privilege with respect to fifteen documents that are not communications between a lawyer and client.  The document Bates numbered 3960, for example, is a communication between Deputy DOC Commissioner Cheryl Cepelak and three non-lawyer DOC employees, including Semple.  (ECF No. 97-11, at 1.)  Similarly, the document Bates numbered 3961-3965 is a communication between a DOC nurse, Tim Bombard, and Dr. Maurer.  (*Id.* at 1-2)  The other thirteen entries that reflect no communications between a lawyer and client are:  3980-3981, 4021-4023, 4024-4080, 4132-4181, 4182-4259, 4260-4309, 4310, 4313-4314, 4326-4327, 4328-4329, 4335-4343, 4344-4360 and 4361-4430.  (*Id.* and ECF No. 102-1.)

If these were his only privilege claims, all fifteen documents would have to be produced.  But Semple also claims that these fifteen documents – and four others numbered 2997-2999, 3004-

3005, 3006-3008 and 4624-4632 – are protected from discovery by the deliberative process privilege.  (ECF Nos. 97-10, 97-11 and 102-1.)

The deliberative process privilege immunizes certain executive agency documents from discovery in litigation.  It "protects from disclosure documents reflecting advisory opinions, recommendations and deliberations comprising part of the process by which governmental decisions and policies are formulated." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 643 F. Supp. 2d at 441 (quotation marks omitted).  To be protected, the document must be "(1) predicisional, i.e., prepared in order to assist an agency decisionmaker in arriving at his decision, and (2) deliberative, i.e., actually . . . related to the process by which polices are formulated." *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 356 (2d Cir. 2005) (quotation marks omitted).  By contrast, the privilege does not protect any documents that are "purely factual," *MacNamara v. City of N.Y.*, 249 F.R.D. 70, 78 (S.D.N.Y. 2008), nor does it protect deliberations over policy proposals that the agency ultimately adopts.  *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980) ("[E]ven if the document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue.").

The Court cannot tell from Semple's logs whether any of the nineteen documents are covered by the deliberative process privilege.  The logs do not confirm that the documents are pre-decisional, nor do they confirm that they are truly deliberative as opposed to "purely factual."  They also do not explain whether the policy proposals being discussed were ultimately adopted or discarded.  Semple will therefore be ordered to produce them for *in camera* review.

### III.   CONCLUSION

For the foregoing reasons, the Court grants the Motion in part and denies it in part as stated in this Ruling and Order and in the orders at ECF Nos. 84 and 85, and orders that:

1. Semple shall, by 5:00 p.m. on Tuesday, July 21, 2020, produce all previously unproduced documents that are responsive to Imperati's Second Set of Requests for Production dated November 22, 2019, without withholding any under attorney-client privilege, deliberative process privilege or work product objections;

2. Semple shall, by 5:00 p.m. on Tuesday, July 21, 2020, transmit to the Court for *in camera* review the documents bearing the following Bates numbers:  2997-2999, 3004-3005, 3006-3008, 3960, 3961-3965, 3980-3981, 4021-4023, 4024-4080, 4132-4181, 4182-4259, 4260-4309, 4310, 4313-4314, 4326-4327, 4328-4329, 4335-4343, 4344-4360, 4361-4430 and 4624-4632.  Semple's counsel shall contact Judge Farrish's law clerk at 860-240-3608 to arrange the transmittal.

Rule 37 provides that if a motion to compel is granted – "or if the disclosure or requested discovery is provided after the motion was filed – the court *must,* after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  Fed. R. Civ. P. 37(a)(5)(A) (emphasis added); *see also Spencer v. Kenny*, No. 3:11-cv-00050 (RNC) (DFM), 2015 WL 6958009, at *2 (D. Conn. Nov. 10, 2015). Although there are exceptions to this rule, *see* Fed. R. Civ. P. 37(a)(5)(A)(i) – (iii), none are obviously applicable to this case based on the current record.  Imperati may therefore apply for an award of reasonable expenses and fees pursuant to Rule 37.  In light of the approaching discovery deadline and the need for resolution of all outstanding discovery issues, the Court will require her

to submit any such application by July 31, 2020.  In accordance with Rule 37(a)(5)(A), Semple will be given an opportunity to oppose the application.

This is not a Recommended Ruling.  This Ruling is reviewable pursuant to the "clearly erroneous" statutory standard of review.  *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Conn. L. Civ. R. 72.2.  As such, it is an order of the Court unless reversed or modified by the District Judge in response to a timely objection under Local Rule 72.2(a).

Dated at Hartford, Connecticut this 16th day of July, 2020.


*/s/ Thomas O. Farrish*
Hon. Thomas O. Farrish
United States Magistrate Judge