UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JEANNE IMPERATI,                     :
AS ADMINISTRATOR OF                  :
THE ESTATE OF WILLIAM                :
BENNETT,                             :

          Plaintiff,                 :

V.                                   :   No. 3:18-cv-1847(RNC)

SCOTT SEMPLE, COMMISSIONER           :
CONNECTICUT DEPARTMENT OF            :
CORRECTION, ET AL.,                  :

          Defendants.                :

## RULING AND ORDER

Former Commissioner Semple has objected in
part to Magistrate Judge Farrish's Ruling and
Order On In Camera Review (ECF 170), which granted in
part and denied in part Semple's remaining objections
to the plaintiff's requests for production of
documents.  For reasons that follow, the objections on
appeal are sustained in part and the matter is referred
back to Judge Farrish.

## The MOA Analysis

The Criminal Justice Institute (CJI) prepared two reports for the Attorney General's Office to enable it to provide legal advice to Semple as Commissioner of the Department of Correction in connection with the quality of medical care provided to persons in DOC custody by Correctional Managed Health Care ("CMHC") under a Memorandum of Agreement with the DOC ("the MOA").

One report is entitled "Assessment of the Quality of Healthcare Provided to 25 Inmates" (Doc. 4383-4430). This report includes reviews of the quality of medical care in 25 cases selected for CJI review by Semple's staff: Deputy DOC Commissioner Cheryl Sepelak; DOC Medical Director Kathleen Maurer, MD; Nurse Tim Bombard; and Nurse Jennifer Benjamin.  In selecting the cases for CJI review, these DOC personnel worked in conjunction with Assistant Attorney General Terrence M. O'Neill and Assistant Attorney General Nicole Anker. This report is referred to as the "Individual Inmate Reviews."

The other report is entitled "Comparative Analysis of Current and Proposed Agreements for Healthcare Services, and Recommendations for Improving the Proposed Agreement" (Doc. 4362-4381). This report analyses the then-existing MOA and a proposed new MOA that was being considered at the time.  This report is referred to as the "MOA Analysis."

The record shows that both reports were transmitted by George M. Camp of CJI to AAG O'Neill, with a copy to then-Commissioner Semple, within about two hours of each other on March 15, 2017.  See Doc. 4382 (transmitting the final draft of the Individual Inmate Reviews at 11:47 AM) and Doc. 4361 (transmitting a draft of the MOA Analysis at 1:58 PM and inviting feedback from O'Neill and Semple).

In the proceedings before Judge Farrish, Semple argued that "the CJI Report" is protected from disclosure by the attorney-client privilege, the deliberative process privilege and the attorney work product doctrine.  Judge Farrish ruled that Semple had

met his burden of showing that the attorney-client
privilege applies to the Individual Inmate Reviews but
not the MOA Analysis.  Though Semple had shown that the
CJI Report was an instance of a lawyer "need[ing]
outside help" from a non-lawyer consultant "to convey
legal advice," he had "done nothing" to support his
privilege claim with regard to the MOA Analysis, such
as coming forward with sworn testimony from AAG O'Neill
to demonstrate that the document was necessary for
effective consultation.  Judge Farrish therefore
ordered Semple to produce the MOA Analysis (with
limited redactions) but not the Individual Inmate
Reviews.

     Semple now argues that the MOA Analysis (Doc.
4362-81) is "part of the CJI Report" and therefore
"subject to the same attorney-client privilege[]
protections as the remainder of the CJI Report."  "Both
parts of this Report are so closely intertwined as to
constitute one privileged document which served to
advise and inform both the attorney and client in the

capacity of their attorney-client relationship."
Accordingly, "the MOA Analysis portion of the CJI
Report" should not be "carved out of the attorney-
client privilege protection allowed for the remainder
of the CJI Report."  Based on my review of the record,
it appears that this argument was not made in Semple's
submissions to Judge Farrish.

Semple has not shown that Judge Farrish erred in
differentiating the Individual Inmate Reviews from the
MOA Analysis.  In a supplemental brief submitted to
Judge Farrish (ECF 126), which was Semple's main brief
on the issues pertinent to this appeal, Semple
differentiated between the two.  The brief refers
throughout to "the CJI Report" (or "the expert report")
in a manner that equates the "the CJI Report" with the
Individual Inmate Reviews.  When the brief turns to
address specific documents on the privilege log, it
lists multiple drafts of the Individual Inmate Reviews
(and related emails), each time referring to the
document as "a draft of the CJI report."  See ECF 126,

at 15 ¶¶ 8, 9 (Docs. 4024-4080; 4132-4181); and 16, ¶
11 (Doc. 4260-4309).  None of those sets of documents
includes a draft of the MOA Analysis.  Toward the end
of the brief, reference is made to Documents 4361 to
4430, which include the final draft of the Individual
Inmate Reviews and, for the first time, a draft of the
MOA Analysis.  See id. at 20, ¶ 18.  Referring to these
documents, the brief states: "Here, Mr. Camp provided
AAG O'Neill with a draft of the updated assessment of
[the] quality [of] healthcare provided to twenty-five
inmates, i.e., a draft of the CJI Report, along with
his recommendations for improving the proposed [MOA]
with CHMC." (emphasis added).  Thus, the brief itself
differentiated the Individual Inmate Reviews from the
MOA Analysis, referring to the former as "the CJI
Report," and the latter as a separate set of
"recommendations."

　　　Nor has Semple shown that Judge Farrish erred in
finding that no support had been offered to support the
privilege claim with regard to the MOA Analysis.  In

the brief submitted to Judge Farrish, Semple's counsel takes pains to demonstrate that the privilege applies to the subject matter of the Individual Inmate Reviews. But no similar concern is shown for the subject matter of the MOA Analysis, which is not addressed specifically, and rarely alluded to even by implication.

Semple's claim of privilege with regard to the MOA Analysis has at least arguable merit.  As Semple explains, he needed O'Neill's legal advice in order to address systemic problems arising under the MOA, and O'Neill, in turn, needed expert help from CJI.  See also Doc. 4361 (Camp's email to O'Neill with a copy to Semple soliciting their input on the attached draft of the MOA Analysis).  In light of this, it is distinctly possible that a further submission by defense counsel addressed specifically to the MOA Analysis could persuade Judge Farrish to reconsider his ruling.  But the question for me is whether he exceeded his

discretion in rejecting the privilege claim as to the
MOA Analysis.  I cannot conclude that he did.

Prior to issuing the Ruling and Order, Judge
Farrish provided defense counsel with multiple
opportunities to show that the documents on the
privilege log merit protection.  In doing so, he made
it clear that he wanted to rule on the merits of the
privilege claims rather than on the basis of an
inadvertent waiver of the privilege.  In this context,
his decision to reject the privilege claim as to the
MOA Analysis, rather than give Semple yet another
opportunity to make the requisite showing, was not
unreasonable.

Accordingly, Semple's objection to Judge Farrish's
ruling as to the MOA Analysis is overruled.

<u>Documents pertaining to the CJI Reports</u>:

<u>Doc. 3980-81</u>

This document is an email dated May 26, 2016, from
Nurse Bombard to Medical Director Maurer, captioned:
"preliminary case list for independent review," with an

attached list of "concerning cases for independent review."

Judge Farrish ruled that Semple had failed to meet his burden of demonstrating that this document is protected by the deliberative process privilege. Judge Farrish found that the document is not pre-decisional with regard to the relevant decision identified by Semple – identifying cases of inmate care with poor outcomes to be submitted to CJI for review. Judge Farrish also stated that the balance of interests favors disclosure.

Semple argues that the document is pre-decisional on its face because it shows that Bombard and Maurer were in the process of deciding which cases should be given to CJI and the balance of interests does not favor disclosure.

I agree that the document appears to be pre-decisional. Many, but not all, of the cases on this list of "concerning cases for independent review" wound

up in the group of 25 cases that were reviewed by CJI.
Compare Doc. 3981 with Doc. 4385-86.

I recognize that Judge Farrish said the balance of
interests favors disclosure, and I cannot say that his
view of the balance is clearly erroneous.  However, I
cannot exclude the possibility that his assessment of
the balance of interests may have been influenced by
his previous conclusion that the document is not pre-
decisional.

Accordingly, the ruling on Doc. 3980-81 is vacated
and the matter is referred back to Judge Farrish for
reconsideration.

Doc. 3961

This document is the last link in a five-link
email chain preceding Bombard's preparation of Doc.
3980-81, discussed above.  The first four links, all
dated May 18, 2016, are to or from Maurer and Assistant
Attorney General Anker, with cc's to Bombard and
Benjamin, captioned "Re: Cases for Possible Expert
Review."  The fifth, dated May 19, is from Bombard to

Maurer, and bears the same caption, but shows no copy
going to Anker.

Semple objected to producing this document based
on the attorney client and deliberative process
privileges.

Judge Farrish sustained Semple's attorney-client
privilege objection as to the first four email links
but not as to the fifth, presumably because it shows no
copy going to Anker.  He also overruled Semple's
objection based on the deliberative process privilege
finding the fifth link "too pedestrian to merit
protection."

Semple argues that the fifth link is protected by
the deliberative process privilege because it discusses
cases that subsequently appeared on the list of
concerning cases for independent review in Doc. 3980-
81.

After careful consideration, Semple's objection to
producing the fifth link is sustained because the
document does appear to satisfy the elements of the

deliberative process privilege.  In particular, Bombard
appears to be making suggestions with regard to three
cases then under consideration by Maurer, Bombard,
Benjamin and Anker for review by an independent expert.
As to each case, he makes suggestions for providing
direction to the reviewer concerning (1) the period of
time the review should cover and (2) the medical
records that should be provided to the reviewer.  The
cases were among the ones that Anker had just discussed
at a meeting with Bombard and Benjamin the previous
day, which Maurer had been unable to attend.  See Doc.
3962.

Accordingly, Semple's objection as to Doc. 3961 is
sustained.

Doc. 4021-23

This document is an email dated February 2, 2017,
from Maurer to "Kathleen2" captioned "FW: most recent
concerning cases," with an attached list of 8 cases
that had "surfaced since the review of our previous 25
concerning cases."

Semple objected to producing this document based on the deliberative process privilege.  Judge Farrish ruled that the document is not pre-decisional, and the balance of interests favors disclosure.

Semple argues that the deliberative process privilege applies because the document contains additional cases for review by CJI and "evinces an ongoing process of identifying and considering data."

I agree that the document appears to be pre-decisional.  The email's reference to "our previous 25 concerning cases" misleadingly suggests that the 25 cases eventually included in the Individual Inmate Reviews had already been selected.  However, soon after the email was sent, Mr. Camp of CJI sent an email to AAG O'Neill dated February 8 (Doc. 4024) attaching what appears to be the first draft of the Individual Inmate Reviews (dated February 6), which at the time encompassed medical care provided to 21 inmates, not 25.  One month later, on March 9, Camp sent an email to O'Neill (Doc. 4132) attaching an "updated report" that

now included reviews of medical care provided to 25 inmates (the title page of the updated draft still refers, erroneously, to 21 inmates).  Thus, it appears that four new cases were submitted to CJI between February 8 and March 9.

None of the cases in the list attached to Maurer's email of February 2 (Doc. 4021) appears in the updated report.  But the question presented to me is whether the process of selecting cases for review by CJI was still ongoing as of February 2, as Semple seems to claim.  If it was, then Maurer's email was pre-decisional.

Accordingly, as with the ruling on Doc. 3980-81 discussed above, the ruling on Doc. 4021-23 is vacated and the matter is referred back to Judge Farrish.

Docs. 4335-43, 4344-60

These documents consist of (1) an email dated July 20, 2017, from Bombard to Maurer with a copy to Cepelak, captioned "continued concerns," with an attached list of (a) 11 "new sentinel cases" and (b)

CMHC's "ISBAR response" for one of the cases; (2) a
follow-up email dated July 25, 2017, from Bombard to
Maurer, with no copy to Cepelak, bearing the same
caption; (3) a follow-up email dated August 10, from
Bombard to Cepelak and Maurer, with a copy to AAG
Anker, bearing the same caption and referring to an
attached xl file; (4) a follow-up email dated August
14, from Cepelak to Bombard and Maurer, with a copy to
AAG Anker, bearing the same caption; and (5) an email
dated December 13, 2017, from Bombard to Maurer,
similarly captioned "continued concerns," and attaching
an xl file.

Semple objected to producing these documents on
the grounds that they are protected by the deliberative
process privilege, the attorney-client privilege and
the work product doctrine.

Judge Farrish overruled the objection based on the
deliberative process privilege finding that the
documents are dated after the decision said to be under
consideration (i.e. deciding which cases to send to CJI

for review) and relate more to measuring compliance
than a contemplated policy decision.  He also weighed
the relevant interests and found that the balance
"weighs heavily" in favor of disclosure.

Judge Farrish also disagreed with Semple that the
documents are protected by the attorney-client
privilege and work product doctrine, since they are not
communications between client and counsel, were not
made for the purpose of obtaining legal advice and were
not made in anticipation of litigation.

Semple continues to claim that these documents are
protected by the deliberative process privilege.[1]  He
contends that the documents are pre-decisional because
the CJI Report existed in draft form only and "[i]t was
well within the realm of possibility that a final
report could be prepared or that review would otherwise
be ongoing."  Semple also argues that the balance of
interests does not favor disclosure because the
plaintiff "has had ample opportunity to depose

---

[1] Semple has abandoned his previous reliance on the attorney-
client privilege and work product doctrine.

16

defendants and nondefendants in this case" and could have deposed the parties to the emails in these documents as well.

Semple has not shown that Judge Farrish erred in ruling that these documents are not protected by the deliberative process privilege. The possibility that the "final draft" of the Individual Inmate Reviews could still be revised is too tenuous to support the claim of privilege, and Judge Farrish did not clearly err in concluding that the balance of interests favors disclosure.

Accordingly, the objections to the Ruling and Order are sustained in part and the matter is referred back to Judge Farrish.

So ordered this 8th day of May 2024.

_____/s/ RNC_____
Robert N. Chatigny
United States District Judge